UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-cr-137 (DLF) |
| v. : | |
| : | |
| PAYTON VALDEZ, : | |
| : | |
| Defendant : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Payton Valdez has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Valdez to 60 days' incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I. **Introduction**

Defendant Payton Valdez, thirty-years-old, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020

1

Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Valdez pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by Valdez's (1) recent and scofflaw criminal history, (2) reckless flight from police officers who sought to execute a warrant for his arrest in this case, (3) threats of armed political violence, (4) entry into the Capitol through a broken window, (5) posing inside the Crypt with a stolen or abandoned under duress police riot shield; (6) refusal to cooperate fully with Probation in the preparation of his pre-sentence report; and (7) failure to express remorse for his conduct connected to the riot.

The Court must also consider that Valdez's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Valdez's crime support a sentence of 60 days' incarceration and 36 months' probation in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense, ECF No. 25.

*Defendant Valdez's Role in the January 6, 2021 Attack on the Capitol*

Payton Valdez drove with his father, Daniel Valdez, to Washington, D.C. from Colorado to attend the "Stop the Steal" rally on January 6, 2021.

After marching to the Capitol, Payton Valdez took a video of the mob outside the building. This video captured Payton Valdez shouting "1776 … you wait til nighttime, it's gonna get ROWDY … you're protecting pedophiles … next time we won't fuckin come unarmed!" Exhibit 1.

At approximately 2:24 p.m., about ten minutes after the Capitol was initially breached at that location, Daniel and Payton Valdez entered the Capitol through a broken window near the Senate Wing door. As they did, they would have heard the blaring alarms and seen the broken glass from the window scattered on the floor adjacent to the window.

Daniel and Payton Valdez then walked to and around the Crypt. While inside the Crypt, Payton Valdez posed for several photographs:



*Image 1 – Payton Valdez with a beer in the Crypt*



*Image 2 – Payton Valdez drinking in the Crypt*

4



*Image 3 – Payton Valdez in the Crypt with a police riot shield*

At approximately 2:33 p.m., Daniel and Payton Valdez exited the Capitol out of the same broken window through which they entered. In total, they were inside the Capitol for approximately ten minutes.

Payton and Daniel Valdez remained on the Upper West Terrace for around an hour and took pictures of the mob of rioters and of lines of police officers in riot gear.

While on the Upper West Terrace, Payton Valdez told a YouTube streamer "The next time we come back, it ain't gonna be fucking unarmed. That's for goddamn sure." Exhibit 2. Later, Payton and Daniel Valdez descended to the inauguration stage and observed the violence at the mouth of the Lower West Terrace Door, or the "Tunnel."

*Payton Valdez's Reckless Flight from Police Officers Seeking to Arrest Him in this Case*

On October 12, 2023, police officers in Aurora, Colorado activated their lights and attempted to pull over a car Valdez was driving to effectuate a warrant for his arrest in this case. Instead of pulling over, Valdez fled at high speed and at one point swerved into oncoming traffic to evade the officers. To avoid unnecessary hazard, the officers broke off their chase.

As a result of Valdez's flight from officers, the FBI was forced to employ considerable resources—including a SWAT team—to arrest him in his home five days later. During this arrest, Payton Valdez admitted to fleeing from the officers—confirming that he was indeed driving his car on October 12.

*The Charges and Plea Agreement*

On March 15, 2024, the United States charged Valdez by a two-count Information with violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). On April 5, 2024, pursuant to a plea agreement, Valdez pleaded guilty to Counts One and Two of the Information. By plea agreement, Valdez agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Valdez now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Payton Valdez faces up to six months of imprisonment and a fine of up to $5,000 for each count. Payton Valdez must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 60 days' incarceration on Count One and 36 months' probation on Count Two.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Valdez's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Valdez, the absence of violent or destructive acts is not a mitigating factor. Had Valdez engaged in such conduct, he would have faced additional criminal charges.

The most important factors in Payton Valdez's case are his threats of armed political violence and consistent disregard for the law.

Payton Valdez was not a peaceful protestor on January 6, 2021. He was thrilled to see police officers overwhelmed by violence, shouting gleefully "1776 … you wait til nighttime, it's gonna get ROWDY … you're protecting pedophiles … next time we won't fuckin come unarmed!" Exhibit 1. He repeated this final threat of armed political violence after exiting the Capitol, "The next time we come back, it ain't gonna be fucking unarmed. That's for goddamn sure." Exhibit 2. Payton Valdez's mugging for the camera while holding an abandoned or stolen

police riot shield inside the Crypt further demonstrates his gleeful embrace of violence against the police.

Payton Valdez's recent criminal history and gun ownership make these threats credible. On October 18, 2023, Payton Valdez fired a gun multiple times while pursuing someone in his car. *See* Exhibit 3 at 9. The victim knew Payton and feared him because of his "violent tendencies." *Id*. at 4. When a police officer attempted to pull Payton over, he fled at high speed. Payton ran a red light and swerved into oncoming traffic to avoid a spike strip, deployed by another officer. *Id*. at 4-9. He was charged with felony Assault Menacing—Real/Simulated Weapon—and felony Vehicular Eluding. Payton Valdez pled guilty to Felony Vehicular Eluding and misdemeanor Assault Menacing and is currently serving 18 months' probation. PSR ¶ 31.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Valdez's History and Characteristics

Valdez consistently disregards the law and clearly has no concern for the safety of others—especially police officers. As set forth in the PSR, his criminal history consists of Driving under the Influence and Careless Driving in 2015, Possession of a Controlled Substance in 2020, and felony Vehicular Eluding and misdemeanor Assault Menacing in 2023. PSR ¶ 29-31.

Beyond driving under the influence and possessing methamphetamine (found next to a handgun), Payton Valdez has now twice attempted to elude police officers at high speed, putting their safety and the safety of other drivers at grave risk. *Id*.

His criminal history and prior convictions thus elevate the need for a serious sentence, compared to other rioters who had no criminal history.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

9

*Specific Deterrence*

The need for the sentence to provide specific deterrence to Valdez also weighs heavily in favor of a lengthy term of incarceration.

First, as discussed above, Valdez made multiple threats to commit armed political violence. *See* Section IV(A) *supra*. He proved his willingness to use a firearm in the commission of a crime through his 2023 Assault Menacing conviction. The Court's sentence must be severe enough to deter Valdez from acting on these threats.

Second, Valdez's flight from police officers at high speed into oncoming traffic shows his blatant disregard for the safety of police officers and his fellow citizens. His taunting of the officers being assaulted on the Lower West Terrace and posing with a police riot shield confirm this dangerous attitude.

Third, as discussed above, Payton Valdez's history of prior arrests and convictions reveals a clear pattern of disrespect for the law. *See* Section IV(B) *supra.* Every time he was sentenced, Payton Valdez was given an opportunity to serve only a term of probation.[2] But his prior convictions and terms of probation did not deter Payton Valdez from committing more crimes on January 6.

Given his failure to express any remorse to date, the Court should view any remorse Valdez expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30.

With the 2024 presidential election approaching and many loud voices in the media and online continuing to sow discord and distrust of the electoral process itself, the potential for a

---

[2] As of August 13, 2024, he is still serving probation for his 2023 felony Eluding and misdemeanor Assault Menacing convictions. PSR ¶ 31.

repeat of January 6 looms ominously. The Court must sentence Valdez in a manner sufficient to deter him specifically, and others generally, from again turning to political violence.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[3] This Court must sentence Valdez based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Valdez has pleaded guilty to Counts One and Two of the Information, charging him with Disorderly Conduct in a Capitol Building or Grounds and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

In *United States v. Michael Gareth Adams*, 21-cr-430 (TJK), the defendant pled guilty to one misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G). Like Valdez, Adams fled from arrest, had a checkered criminal history, and cheered on the violence against officers on the Lower West Terrace. While Adams avoided arrest for nearly a year and a half, he merely failed to appear to a hearing—a far less aggravated form of flight than Valdez's high-speed evasion into oncoming traffic. Unlike Valdez, Adams did not threaten to return to the Capitol "armed." Although Valdez recklessly fled from police, once arrested, he took responsibility quickly by accepting a pre-information plea offer. Judge Kelly sentenced Adams to 60 days of incarceration, citing Adams's demonstrated pattern of disrespect for the law. Valdez's disrespect for the law is just as aggravating as Adams'.

In *United States v. Cody Lee Tippett*, 23-cr-337 (CRC), the defendant pled guilty to the same misdemeanors as Valdez. Like Valdez, Tippett had a felony and misdemeanor criminal history. But, unlike Payton, Tippett had a stable family life and owned a business—which Judge Cooper cited as mitigators. Like Payton, Tippett also posed for a picture in the Crypt, but he held an "Area Closed" sign instead of a riot shield. While Tippett did move chairs to prevent a security door from closing, he did not threaten to return "armed"—a credible threat that the government considers a significant aggravator necessitating deterrence. Judge Cooper sentenced Tippett to 30 days' incarceration and 36 months' probation. Payton Valdez's threats and his reckless flight from officers justify the government's higher recommendation of 60 days' incarceration and 36 months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d

12

220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

13

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Valdez must pay $500 in restitution, which reflects in part the role Valdez played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Valdez's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 86.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 60 days' incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Valdez's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    *s/ Tighe R. Beach*
        TIGHE R. BEACH
        Assistant United States Attorney
        CO Bar No. 55328
        601 D Street NW
        Washington, D.C. 20001
        (240) 278-4348
        Tighe.beach@usdoj.gov